**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| OYEKUNLE STEPHEN OYELAKIN | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 26-1202 |
| | : | |
| HANNAH OLUSOLA EDWARD | : | |

**<u>MEMORANDUM</u>**

**KEARNEY, J.**                                                                                        **June 9, 2026**

A father disappointed with a state court child support order hopes to sue his child's mother

for identity theft notwithstanding a final order in state court. But the father has not yet served his

complaint on his child's mother. The delay appears to arise because the child's mother lives in

Ireland. The father must effect service of his complaint upon her in Ireland. He claims to have tried

to do so. But Ireland's Central Authority does not recognize his pro se attempts as Ireland requires

a solicitor to make service by mail. The father wishes to avoid the Irish law obligation by asking

us to allow him to serve the mother in Ireland with the complaint in this case (1) by email; (2)

attached to a WhatsApp message; and (3) by international registered mail to the mother's last

known address in Ireland. We deny the father's present request. He needs to proceed consistent

with Irish law. We may not disregard Irish law under the Hague Service Convention when the

father knows the identity and address of the person he wishes to sue (the mother of his child) and

there is no basis to find she is evading service or otherwise frustrating the service process. The

father needs to follow the law.

## I. Facts

Oyekunle Stephen Oyelakin sued the mother of his child, currently residing in Ireland, for

identity theft, conversion, and unjust enrichment under Pennsylvania law seeking compensatory

damages and statutory damages under Pennsylvania's identity theft statute relating to his obligations to pay child support under a Philadelphia state court child support order.[1] Mr. Oyelakin seeks a declaration Mother's alleged "unauthorized use, possession, submission, and/or transmission of [his] [Social Security Number]—through the documentary conduits identified in the exhibits—was unlawful" and preliminary and permanent injunctive relief restraining Mother from "any further unauthorized use, possession, submission, disclosure, or transmission" of his Social Security Number, an "accounting" directing Mother to identify to whom she disclosed his Social Security Number, "corrective notices," document preservation, pre- and post-judgment interest, costs and attorney's fees, and other relief we deem just and proper.[2]

Mr. Oyelakin did not serve his Complaint on Mother in Ireland. He advises he attempted to serve her under the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965 (Hague Service Convention).[3] Ireland is a signatory to the Convention. He claims to have done so by mailing copies of the Summons and Complaint along with a request for service on Mother under the Hague Convention to Ireland's Central Authority on March 3, 2026.[4] An official of Ireland's Hague Convention High Court Central Authority refused to process Mr. Oyelakin's service request, advising him Ireland's Central Authority does not process "Hague requests for lay litigants."[5] We construe "lay litigants" to mean pro se litigants not represented by a solicitor in Ireland. Mr. Oyelakin has apparently not retained a solicitor consistent with Irish law.

Mr. Oyelakin argues service under the Convention is "practically unavailable" to him because Ireland's Central Authority will not process a pro se request for service.[6] Mr. Oyelakin moves under Federal Rule of Civil Procedure 4(f)(3) seeking leave to serve Mother with the

Summons and Complaint (1) by email; (2) attached to a WhatsApp message; and (3) by international registered mail to Mother's last known address in Ireland.[7]

## II. Analysis

We now examine whether Mr. Oyelakin can avoid Irish law governing service by asking us to allow alternative service he has not shown Irish law permits. The Supreme Court, through Federal Rule of Civil Procedure 4(f), provides the methods of service on an individual in a foreign country. Service may be made "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by" the Hague Service Convention; or, if there is no "internationally agreed means" of service, by a method reasonably calculated to give notice with certain restrictions; or "by other means not prohibited by international agreement, as the court orders."[8]

### A.  Ireland's position on service under the Hague Service Convention.

Articles 2 through 7 of the Hague Service Convention prescribe the manner in which service should be executed upon a person residing in a signatory nation like Ireland and require each signatory nation to establish a "Central Authority" to receive requests for service of documents from other countries.[9] Articles 8 through 11 prescribe additional methods of service in signatory nations, including a process for a signatory nation to object to the use of additional methods of service within its territory.[10]

Article 10 of the Hague Service Convention addresses additional methods of service: "Provided the State of destination does not object, the present Convention shall not interfere with -- (a) the freedom to send judicial documents, by postal channels, directly to persons abroad, (b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent

persons of the State of destination, (c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination."[11]

Ireland objected to Article 10(b) and (c), but clarified its objection as "not intended to preclude any person in another Contracting State who is interested in a judicial proceeding (including his lawyer) from effecting service in Ireland directly through a solicitor in Ireland."[12] According to the United States Department of State, "[i]nternational service of process by registered mail is allowed in Ireland, but this method will only record delivery to an address and not to a person."[13]

Ireland's response to the 2008 Hague Conference questionnaire on the practical operation of the Hague Service Convention clarified Ireland does **not** interpret the phrase "postal channels" in Article 10(a) to include fax, email, SMS (Short Message Service), or posting on a website.[14]

The United States Supreme Court in 2017 held the Hague Service Convention does not prohibit service by mail.[15] The Court held Article 10(a)—allowing "the freedom to send judicial documents, by postal channels, directly to persons abroad"—includes service by mail.[16] The Court clarified "this does not mean that the Convention affirmatively **authorizes** service by mail."[17] The Court held in cases governed by the Hague Service Convention, service by mail is permissible "if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized by otherwise-applicable law."[18]

### B.  We look to limited guidance under Federal Rule of Civil Procedure 4(f)(3).

Mr. Oyelakin asserts Rule 4(f)(3) allows us to issue an order for alternative service on Mother in Ireland by any means "not prohibited by international agreement."[19] He relies on a 2002 opinion of the United States Court of Appeals for the Ninth Circuit in *Rio Properties* to support

his argument we may issue an order allowing him to serve Mother by email, WhatsApp, and international registered mail.[20] In *Rio Properties*, a Las Vegas hotel and casino operator sued a foreign Internet business entity in Costa Rica. Costa Rica is not a signatory to the Hague Service Convention. The hotel operator served process by email and regular mail after obtaining an order for alternative service under Rule 4(f)(3). The Costa Rican defendant challenged service after the district court entered default judgment against it.

The court of appeals held Rule 4(f)(3) is "an equal means of effecting service of process under the Federal Rules of Civil Procedure," rejecting an argument a plaintiff seeking alternative service under Rule 4(f)(3) must first attempt to serve process under the methods prescribed by Rule 4(f)(1) and (2).[21]

The facts of *Rio Properties* are distinguishable. Unlike Ireland, Costa Rica is not a signatory to the Hague Service Convention. The parties in *Rio Properties* agreed the Hague Convention did not apply because Costa Rica is not a signatory and the court noted "[a] federal court ***would be prohibited*** from issuing a Rule 4(f)(3) order in contravention of an international agreement, ***including*** the Hague Convention referenced in Rule 4(f)(1)."[22]

The court explained the plaintiff is not required to "have attempted every permissible means of service of process before petitioning the court for alternative relief;" the plaintiff hotelier "needed only to demonstrate that the facts and circumstances of the present case necessitated the district court's intervention" under Rule 4(f)(3) and service must "comport with constitutional notions of due process."[23] The court reached its holding because the plaintiff "presented the district court with its inability to serve an elusive international defendant, striving to evade service of process" and, under those facts, the district court "properly exercised its discretionary powers to

craft alternate means of service" under Rule 4(f)(3) "to ensure the smooth functioning of our courts of law."[24]

The facts presented by Mr. Oyelakin are different. He does not demonstrate Mother is "an elusive international defendant striving to evade service of process." Even if we adopted the Court of Appeals for the Ninth Circuit's interpretation of Rule 4(f)(3), alternate service is only allowed "as long as court-directed *and not prohibited by an international agreement*."[25]

The Advisory Committee Notes to the 1993 Amendment to Rule 4(f) explain Rule 4(f)(1) "gives effect to the Hague Convention" as "an important means of dealing with problems of service in a foreign country" and "[u]se of the Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service."[26] The Advisory Committee also noted if a foreign country's Central Authority is "dilatory or refused to cooperate [with service requests] for substantive reasons," "resort may be had to the provisions set forth in subdivision (f)(3)."[27]

Our Court of Appeals has not addressed "whether Hague-compliant service must be attempted before alternative service is allowed under Rule 4(f)(3)."[28] We look to recent guidance from Judge Arteaga's denial of a motion for alternative service under Rule 4(f)(3) on a defendant in China a little over two years ago.[29] The plaintiff sought an order under Rule 4(f)(3) to serve the defendant Chinese company by email to its counsel without first attempting service under the Hague Convention. The plaintiff represented to Judge Arteaga his attempts to serve process in accordance with the Hague Convention at multiple addresses for the Chinese company "stymied" his attempts to effectuate service.[30] China objects to service by postal channels under Article 10.[31]

Judge Arteaga first examined whether email service on the Chinese defendant's attorney would comply with Rule 4(f)(1). He reasoned service on the Chinese company by email to its attorney is not in accordance with the Hague Convention which requires a signatory's Central

Authority to serve documents, after receiving a proper service request, "by a method prescribed by the internal law of the receiving state or by a method designated by the requester and compatible with that law."[32] Judge Arteaga concluded plaintiff "seeks to avoid using China's Central Authority to effectuate service" on the Chinese defendant.[33] Judge Arteaga found China objected to service by postal channels, including email, and "because email would bypass the methods of service the Hague Convention authorizes, the Convention preempts it as inconsistent."[34]

Judge Arteaga then turned to alternative service under Rule 4(f)(3) which may be available when the Hague Convention does not apply. The Hague Convention does not apply "where the address of the person to be served … is not known."[35] Judge Arteaga concluded the plaintiff did not show the defendant's address is incorrect or otherwise unknown and did not show the inapplicability of the Convention's requirements. Judge Arteaga denied the motion for alternative service under Rule 4(f)(3) as "premature" to be renewed if plaintiff could show the defendant's address is unknown after reasonable diligence or show other circumstances which might justify the use of alternate service methods, including where China's Central Authority failed to make service within the six-month time period for service under the Convention.[36]

Chief Judge Beetlestone, on the other hand, granted a motion for alternative service under Rule 4(f)(3) approximately six years ago.[37] There, a plaintiff sued Swiss defendants in a products liability case. United States-based counsel for the Swiss defendants refused to accept service of the complaint and plaintiff sought alternative service under Rule 4(f)(3). Chief Judge Beetlestone rejected the defendants' arguments service under Rule 4(f)(3) cannot be made unless attempts at service under the Hague Convention through Rule 4(f)(1) have been exhausted and unsuccessful.[38]

Chief Judge Beetlestone, relying on the *Rio Properties* decision, concluded Rule 4(f) does not "contain[] [a] hierarchy between the authorized methods for international service as delineated

in subsections (1)–(3)."[39] Chief Judge Beetlestone granted the motion, concluding alternative service on the Swiss companies' United States-based counsel is "the most judicially efficient option" to avoid delays in the litigation and comports with due process.[40] Part of Chief Judge Beetlestone's reasoning included the fact another corporation with a close relationship to the unserved defendant had already been served under the Hague Convention, making service on the closely affiliated unserved defendant "duplicative, unnecessary, and inefficient."[41] Mr. Oyelakin again presents an entirely distinguishable set of facts.

We are also guided by our Court of Appeals' decision two years ago vacating the entry of default judgment against a resident of Switzerland in an action brought by the Securities and Exchange Commission for lack of proper service.[42] The Commission requested the Swiss Central Authority to serve the individual with the complaint but the Central Authority responded it could not serve the individual because he was out of the country for a four-month period and would reattempt service upon the individual's return. The Commission received extensions to serve the individual and attempted to contact the individual by email.

The Commission then moved Judge Smith to hold the Hague Convention did not apply because unsuccessful efforts to serve the individual at the Swiss address made it unlikely he still lived there, authorize service by email under Rule 4(f)(3), and extend the service deadline to allow the Commission to serve the individual at an address in the United Kingdom. Judge Smith granted the motion.[43]

The Commission did not effectuate service either at a physical address or show emails attempting to serve the individual were opened but requested default judgment granted by Judge Smith. The individual moved to vacate the judgment for lack of jurisdiction and improper service.

8

Our Court of Appeals vacated the entry of default judgment. It reasoned the Convention is "mandatory in all cases to which it applies" and does not apply where the address of the person to be served is unknown.[44] The court concluded the Swiss Central Authority's failure to effect service did not render the individual's address "not known" for purposes of the Convention and, because the Convention applied, considered whether email service constituted proper service under the Convention.[45]

Our Court of Appeals found the Convention does not expressly provide service by email, there is no evidence the United States and Switzerland agreed to email service under the Convention, and email service under Swiss law is only permitted if the party to be served consents and no evidence of record showed the individual consented to email service.[46] Our Court of Appeals concluded email service on the individual in Switzerland is not permitted under the Convention and, because the Commission did not properly serve the individual, Judge Smith erred in the entry of default and default judgment.[47]

### C.  We deny Mr. Oyelakin's motion for alternative service under Rule 4(f)(3).

Against this background, we examine whether we may authorize alternative service on Mother in Ireland. We conclude we cannot authorize Mr. Oyelakin's requested service.

Mr. Oyelakin's attached correspondence confirms Ireland's Central Authority would serve Mother if Mr. Oyelakin retained an Irish solicitor. This does not make service under the Hague Convention "practically unavailable" to him. He chose to sue Mother who resides in Ireland which comes with certain service rules. His attempt to use alternate channels appears to be an attempt to avoid using Ireland's Central Authority to effectuate service on Mother, similar to Judge Arteaga's finding in *Elliott* where the plaintiff sought permission to effectuate service by email to the Chinese defendant's counsel where China objected to service by "postal channels."

If we were to accept Mr. Oyelakin's argument, a plaintiff seeking to serve a foreign defendant could simply ignore the Hague Convention and seek service by alternate means. Mother's address is known, so this is unlike cases where the address of the person to be served is unknown making the Convention inapplicable. And although the Court of Appeals for the Ninth Circuit and Chief Judge Beetlestone, on very different facts, reject a construction of Rule 4(f)(3) as applicable only when service under the Hague Convention specified in Rule 4(f)(1) fails, our Court of Appeals in *Lahr* noted the Special Commission on the practical operation of the Service Convention in 2009 "unanimously adopted the view that the Convention is 'of a non-mandatory but exclusive character.'"[48]

Mr. Oyelakin does not provide a basis to find Ireland would allow service by email or WhatsApp. To the contrary, based on our research, it appears Ireland, in the 2008 Hague Conference questionnaire on the practical operation of the Hague Service Convention, disavowed service by fax, email, SMS, or posting on a website as within acceptable "postal channels" for service under Article 10(a) of the Convention.

So Mr. Oyelakin is left with a possible international service of process by registered mail under Article 10(a) of the Convention to which Ireland does not object. But we discovered from the United States Department of State service of process by international registered mail, while allowed in Ireland, "only record[s] delivery to an address and not a person" raising issues of effective service later in the litigation.[49]

We conclude Ireland's acceptance of Article 10 of the Convention does not authorize Mr. Oyelakin's presently described attempts at alternative service. He must follow the correct procedure and then, if still unable to effect service, return to us seeking alternative means of service.

10

### III. Conclusion

We deny Mr. Oyelakin's motion without prejudice for him to renew if service through Ireland's Central Authority, which appears to require personal service by an Irish solicitor, cannot be made.

---

[1] ECF 1.

[2] *Id.* §VIII.

[3] Hague Service Convention, 20 U.S.T. 361, T.I.A.S. No. 6638.

[4] ECF 14 ¶ 3. The Convention "requires each state to establish a central authority to receive requests for service of documents from other countries." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 274 (2017) (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988)).

[5] ECF 14 ¶¶ 4–5.

[6] *Id.* ¶ 5.

[7] *Id.* at 3–4.

[8] Rule 4(f) in its entirety provides: "Unless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a person whose waiver has been filed--may be served at a place not within any judicial district of the United States:

(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

    (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

    (B) as the foreign authority directs in response to a letter rogatory or letter of request; or

    (C) unless prohibited by the foreign country's law, by:

      (i) delivering a copy of the summons and of the complaint to the individual personally; or

      (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

[9] 4B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1134 (4th ed. April 2026 update).

[10] *Id.*; *Water Splash, Inc. v. Menon*, 581 U.S. 271, 275 (2017).

[11] T.I.A.S. No. 663820 U.S.T. 361 February 10, 1969.

[12] https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid =404 &disp=resdn [https://perma.cc/MS44-A5DG].

[13] https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/ Ireland.html [https://perma.cc/H2GY-5BWA].

[14] https://assets.hcch.net/upload/wop/2008ireland14.pdf [https://perma.cc/QU23-QFUY], Part Three, ¶ II, § D.63 at 31 (emphasis added).

[15] *Water Splash*, 581 U.S. at 275.

[16] *Id.* at 284.

[17] *Id.* (emphasis in original).

[18] *Id.*

[19] ECF 14.

[20] *Rio Prop., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). Mr. Oyelakin also relies on *Nuance Commc'ns, Inc. v. Abbyy Software Houes*, 626 F.3d 122 (Fed. Cir. 2010) adopting the Ninth Circuit's decision in *Rio Properties*.

[21] *Rio Properties*, 284 F.3d at 1016.

[22] *Id.* at 1015, n.4 (emphasis added).

[23] *Id.* at 1016–17.

[24] *Id.* at 1016.

[25] *Id.* at 1014 (emphasis added).

[26] Advisory Committee Notes, 1993 Amendment, Rule 4(f) (citing *Schlunk*, 468 U.S. 694).

[27] *Id.*

[28] *Elliott v. Amazon.com, Inc.*, No. 23-3792, 2024 WL 7001720, at *2 (E.D. Pa. May 1, 2024).

[29] *Id.*

[30] *Id.* at *1.

[31] *Id.* at *2.

[32] *Id.* at *2 (quoting *Schlunk*, 468 U.S. at 698).

[33] *Id.*

[34] *Id.* (quoting *Luxottica Grp. S.p.A. v. Partnerships & Unincorporated Assocs. Identified on Schedule "A"*, 391 F. Supp. 3d 816, 826 (N.D. Ill. 2019)).

[35] *Id.* at *3 (quoting the Convention).

[36] *Id.*

[37] *Crockett v. Luitpold Pharma., Inc.*, No. 19-276, 2020 WL 4029046 (E.D. Pa. July 17, 2020).

[38] *Id.* at *1.

[39] *Id.* at *2.

[40] *Id.* at *2–3.

[41] *Id.* at *2.

[42] *Sec. & Exch. Comm .v. Lahr*, No. 22-2497, 2024 WL 3518309 (3d Cir. July 24, 2024).

[43] *Id.* at *1.

[44] *Id.* at *4.

[45] *Id.* at *5.

[46] *Id.*

[47] *Id.*

[48] *Lahr*, 2024 WL 3518309, at *3, n.12.

[49] *See* n. 14, *supra*.